STATE ex rel. WAYLAND et al. v. VINCENT et al. (No. 1585.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 3, 1919. Rehearing Denied Jan. 14, 1920.)

1. QUO WARRANTO ⬅49—PETITION SUFFICIENTLY SPECIFIC UNDER A GENERAL EXCEPTION.

A petition by the state, on the relation of certain persons, praying that a special act incorporating a city and the charter granted be declared void and the defendants be ousted from their offices, held sufficient, under a general exception, to negative the fact that the qualified voters of the city voted for the adoption of the charter contained in the special act and to show that the state is seeking to oust the officers and vacate the charter upon the relation of the relators named in the petition.

2. QUO WARRANTO ⬅62 — SPECIAL EXCEPTIONS NOT REVIEWED IN ABSENCE OF CROSS-ASSIGNMENTS.

Special exceptions to a petition in quo warranto presented in the court below, which were overruled, cannot be reviewed on appeal where not presented by cross-assignments.

3. CONSTITUTIONAL LAW ⬅45—STATUTE NOT TO BE DECLARED VOID UNLESS NECESSARY.

The power to declare a legislative enactment void is one which the judge, conscious of the fallibility of the human judgment, will shrink from exercising in any case where he can conscientiously and with due regard to duty and official oath decline the responsibility.

4. CONSTITUTIONAL LAW ⬅52, 70(1)—LEGISLATIVE AND JUDICIAL DEPARTMENTS OF EQUAL DIGNITY.

The legislative and judicial are co-ordinate departments of government of equal dignity, and each is alike in the exercise of its proper

functions and cannot directly or indirectly, within the limits of its authority, be subject to the control or supervision of the other, without unwarrantable assumption by that other of power which by the Constitution is not conferred upon it.

5. STATUTES ⊜➡90(1) — ACT INCORPORATING CITY SPECIAL LAW.

Act March 29, 1917 (Acts 35th Leg. c. 142), entitled "An act to incorporate the city of Plainview, Hale county, Texas, and to grant it a charter; to define its powers and prescribe its territorial limits, duties and liabilities, repealing all laws or parts of laws in conflict herewith, and declaring an emergency," is a local or special law within Const. art. 3, § 56.

6. CONSTITUTIONAL LAW ⊜➡18 — AMENDMENT OF SAME EFFECT AS THOUGH ORIGINALLY INCORPORATED.

When a constitutional amendment is adopted, it becomes just as much a part of the organic law as the section amended originally was, and the effect of the amendment is the same as if it had been originally incorporated in the Constitution.

7. CONSTITUTIONAL LAW ⊜➡18 — AMENDMENT PREVAILS OVER INCONSISTENT PROVISION.

If there is an inconsistency between a provision of the Constitution as amended and the Constitution as originally adopted, so that one or the other must yield, the subsequent provision, being the last expression of the sovereign will of the people, will prevail as an implied modification pro tanto.

8. MUNICIPAL CORPORATIONS ⊜➡8 — ACT INCORPORATING CITY AND PROVIDING CHARTER INVALID AS DENYING RIGHT OF INHABITANTS TO ADOPT OR AMEND CHARTER.

Act March 29, 1917 (Acts 35th Leg. c. 142), entitled "An act to incorporate the city of Plainview, Hale county, Texas, and to grant it a charter; to define its powers and prescribe its territorial limits, duties and liabilities, repealing all laws or parts of laws in conflict herewith, and declaring an emergency," violates Const. art. 11, § 5, in that it would defeat the inhabitants of that city of the right to adopt or amend their charter by a majority vote of the qualified electors thereof; the Legislature having no power to pass such an act.

Appeal from District Court, Hale County; W. R. Spencer, Judge.

Proceeding by the State of Texas, on the relation of J. H. Wayland and others, against Charles Vincent and others. Judgment for defendants, and relators appeal. Reversed and remanded.

W. W. Kirk, Geo. L. Mayfield, and L. D. Griffin, all of Plainview, for appellants.

Williams & Martin and Kinder & Russell, all of Plainview, for appellees.

HUFF, C. J. The state of Texas presented its amended information in the nature of a quo warranto, on the relation of J. H. Wayland and others, to Hon. W. R. Spencer, judge of the Seventy-Second judicial district of Texas, designated by the Governor of Texas to exchange benches with Hon. R. C. Joiner, judge of the Sixty-Fourth judicial district of Texas, upon the certification of the latter's disqualification, for an order to file said amended information on the 7th day of August, 1919. The order was granted and indorsed on the application, and upon hearing the trial court sustained a general exception to the petition, but overruled all the special exceptions. The petition alleged, in substance, that with the permission of the court the state of Texas, by and through L. D. Griffin, county attorney for Hale county, Tex., filed this cause on the relation of J. H. Wayland and others, all of whom are resident citizens of Hale county, complaining of Charles Vincent, E. H. Humpries, J. M. Waller, J. C. Cooper, E. Harland, J. M. Malone, John Vaughan, and J. F. Frye, resident citizens of Hale county. It is alleged that on the 12th day of February, 1907, an election was duly held, incorporating the city of Plainview, under and by virtue of an order of the county judge of Hale county, the petition setting out the boundaries of the original incorporation; that on the 29th of March, 1917, the Thirty-Fifth Legislature, at a regular session thereof, passed a special act (Acts 35th Leg. c. 142), entitled "An act to incorporate the city of Plainview, Hale county, Texas, and to grant it a charter; to define its powers and prescribe its territorial limits, duties and liabilities, repealing all laws or parts of laws in conflict herewith, and declaring an emergency." The act is made an exhibit to the petition, and it is alleged that the boundaries of said city were established by said act, in which it is provided the city shall constitute a body politic and corporate under it and to be known by the name and designation of the "City of Plainview," with all the rights, powers, privileges, immunities, and duties therein granted and defined. The boundaries of the city as given by the special act are set out, and include territory in addition to that included in the original incorporation of the city, granting it certain corporate powers and defining the powers of the city council, and other officers, such as mayor, aldermen, tax assessor and collector, city treasurer, secretary, marshal, superintendent of waterworks, etc., giving the qualification of the officers and employés of the city so constituted and prescribing and giving it certain taxing powers named in the act, prescribed for board of equalization and a right to pass ordinances defining its police powers, street and public grounds, fires and fire regulations, sanitation, and general powers. The emergency clause recites that the city of Plainview is in need of the benefit of this act, the present law governing said city

⊜➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

being inadequate, together with the crowded condition of the calendar, etc.

After alleging the powers as substantially above stated, the state, upon the relation of the relators, alleged: That relators were respectively and individually owners, and owned at the time of the passage and approval of said special act and lived wholly without the limits of said corporation first mentioned and between the boundaries thereof, and the boundaries of limits of the territory set out in the special act the following real estate (describing the several special tracts). The special act is attacked on the ground that it is a special act and void, in that it is in contravention of section 56, art. 3, of the Constitution, prohibiting the Legislature from incorporating such cities as Plainview was at the time of the passage, and approval of the special act, etc.; and, second, that said section prohibits the Legislature from enacting or passing a special or local law where a general law can be made applicable; and, third, that it is in direct conflict with and contravenes section 5, art. 11, of the Constitution of Texas, which lodged the sole power in the qualified voters, authorizing a majority thereof residing in such cities as Plainview was at that time to incorporate for municipal purposes, and to adopt a charter; and, fourth, it is in direct conflict with articles 1077 and 1078, Vernon's Sayles Revised Civil Statutes of the state of Texas, in that it attempts to and impliedly abolishes the incorporation by the qualified voter of the city of Plainview as first herein mentioned, by special legislative act, thereby depriving the qualified voters of their legal right to abolish said corporation by the methods prescribed in said articles; and, fifth, it is in direct conflict with articles 1096a and 1096b of Vernon's Sayles Revised Civil Statutes of Texas, in that it deprives the qualified voters residing in the territory set out in said special act at the time of the passage and approval thereof of the right to incorporate for municipal purposes, and to adopt a charter by the method prescribed in said articles. That the defendants are asserting the right to the respective offices provided for in the act by virtue of a pretended election covering said territory included in the boundaries of the special act, setting up the fact that they have levied and assessed and are seeking to collect taxes from the relators on their property, alleging its value and the amount of taxes sought to be recovered, and praying that they have judgment decreeing the special act, and the incorporation of the city of Plainview thereunder and the charter granted the same by the act void, and that the defendants be ousted from their respective offices, etc.

[1, 2] It was suggested in oral argument that the petition did not allege that the qualified voters of Plainview had not voted for the incorporation of the charter as set out in the special act, and that the petition is not sufficiently specific to sustain the action by the state of Texas, in the nature of a quo warranto, in that it shows that it is brought by the relators and not by the state upon the affidavit of the relators. Special exceptions were presented to the trial court, substantially embodying the objections here urged, but were overruled. We think that the petition is sufficient under a general exception and negatives the fact that the qualified voters of the city voted for the adoption of the charter contained in the special act, and it is sufficient to show that the state of Texas is seeking to oust the officers and vacate the charter upon the relation of the relators named in the petition, and we do not feel authorized to pass upon the special exceptions presented in the court below, as the court overruled the special exceptions and they are not presented in this court by cross-assignments. We shall proceed to consider the action of the court in sustaining the general exception to the petition.

[3, 4] In arriving at our conclusion in this case, we have done so in view of the cardinal principles which control legislative and judicial powers under the Constitution.

"The power to declare a legislative enactment void is one which the judge, conscious of the fallability of the human judgment, will shrink from exercising in any case where he can conscientiously and with due regard to duty and official oath, decline the responsibility. The legislative and judicial are co-ordinate departments of government, of equal dignity; each is alike in the exercise of its proper functions and cannot directly or indirectly, within the limits of its authority, be subject to the control or supervision of the other without unwarrantable assumption by that other of power which, by the Constitution, is not conferred upon it. The Constitution apportions the powers of government, but it does not make any one of the three departments subordinate to another when exercising the trust committed to it. The courts may declare legislative enactments unconstitutional and void in some cases, but not because the judicial power is superior in degree or dignity to the legislative. Being required to declare what the law is in the cases which come before them, they must enforce the Constitution as the paramount law, whenever legislative enactments conflict with it. But the courts sit, not to review or revise the legislative action, but to enforce the legislative will; and it is only when they find that the Legislature has failed to keep within its constitutional limits that they are at liberty to disregard its action; and in doing so they only do whatever private citizens may do in respect to the mandates of the courts, where the judges assume to act and render judgment or decree without jurisdiction. In exercising this high authority the judges claim no judicial supremacy; they are only administrators of the public will. If an act of the Legislature is held void, it is not because

the judges have any control over the legislative power, but because the act is forbidden by the Constitution, and because the will of the people, which is therein declared, is paramount to that of their representatives, expressed in any law." Cooley's Constitutional Limitations, 227, 228.

By section 56, art. 3, of the Constitution of this state, it is stipulated:

"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing: * * * Regulating the affairs of * * * cities, towns, wards; * * * incorporating cities, towns, or villages, or changing their charters; * * * creating offices, or prescribing the power and duties of officers, in counties, cities, towns, election or school districts."

Section 4, art. 11, provides, "Cities and towns having a population of five thousand or less, may be chartered alone by general law."

And section 5 provides:

"Cities having more than five thousand (5,000) inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed· by· the Legislature, and providing that no charter * * * shall contain any provision inconsistent with the Constitution of the state, or of the general laws enacted by the Legislature of this state."

[5-7] There can be no serious contention but what the act of 1917, styled "An act to incorporate the city of Plainview, Hale county, Texas, and to grant it a charter; to define its powers and prescribe its territorial limits, duties and liabilities, repealing all laws or parts of laws in conflict herewith, and declaring an emergency," is a local or special law, within the meaning of the Constitution. Clark v. Finley, 93 Tex. 171, 54 S. W. 343; City of Dallas v. Western Electric Co., 83 Tex. 243, 18 S. W. 552; Altgelt v. Gutzeit (Sup.) 201 S. W. 400; Hall v. Bell County, 138 S. W. 178; Id., 105 Tex. 558, 153 S. W. 121; Tolle v. City of New Braunfels, 154 S. W. 345; Ward v. Harris, 209 S. W. 792; Powell v. Charco Independent School Dist., 203 S. W. 1178. We find no exception "otherwise provided in this Constitution" as to incorporating cities or changing their charters at the time the act in question was passed. Before the Constitution, art. 11, § 5, was amended, November 5, 1912, cities of ·more than 5,000 inhabitants, under the section as it then read, "may have their charters granted or amended by special act of the Legislature," but on the above date that section was amended by substituting therefor the provision heretofore quoted, as giving to the people of such cities, by a majority vote, power to adopt or amend their charter. At the date of the act, the Constitution as amended did not otherwise provide that local laws could be passed with reference to granting charters or amending them. The prohibition relating thereto was then in full force. It is urged by appellee in argument that the prohibition' section was in the original instrument as formed by the convention of 1876, under which it has been determined by the courts that cities could have their charter granted or amended by local laws, citing Brown v. City of Galveston, 97 Tex. 1, 75 S. W. 488; City of Oak Cliff v. Gill, 77 S. W. 24; and other cases. It will be observed in reading those cases that 'the power to so incorporate was not derived from the general legislative powers granted to the Legislature, or from the' prohibition clause contained in section 56, art. 3, but that such power was to be found in the exception. City of Dallas v. Western Electric Co., 83 Tex. 243, 18 S. W. 552. When the exception giving the power was withdrawn by· the amendment of 1912, the power no longer existed. It is insisted that the clause, "except as otherwise provided in this Constitution," referred to the Constitution as it then stood with unamended section 5, art. 11, and therefore the amendment did not change "this Constitution." It is needless to say appellee argues from a false premise. The Constitution of 1876, provided for its amendment. Article 17, § 1. It is provided thereby the amendment receiving a majority of the votes cast "shall ,become a part of this Constitution." By the amendment the power theretofore granted the Legislature to pass local laws incorporating cities was withdrawn, and the power was vested in the voters of such city to adopt and amend their charters. This amendment was by the sovereign will of the people, which neither the Legislature nor the courts are at liberty to disregard.

"The amendment of the Constitution is an exertion of the sovereign power of the people of the state to give to their expressed will the force of a law supreme over every person and everything in the state, so long as it does not conflict with the Constitution of the United States. The rule so established bears down and supplants all other laws and rules that are inconsistent with it. In determining rights controlled by‚ it, we therefore have only to ascertain what it means and give it full effect, so long as it encounters no opposition in the higher law of the federal Constitution." Gillespie v. Lightfoot, 103 Tex. 359, 127 S. W. 799; Hammond v. Clark, 136 Ga. 313, 71 S. E. 479, 38 L. R. A. (N. S.) 77.

When a constitutional amendment is adopted, it becomes just as much a part of the organic law as the section amended originally was, and the effect of the amendment is the same as if it had been originally incorporated in the Constitution. State v. Ry. Co., 195

Mo. 228, 93 S. W. 784, 113 Am. St. Rep. 661. If there was to any extent an inconsistency between the provision as amended and the Constitution as originally adopted, so that one or the other must yield, the subsequent provision, being the last expression of the sovereign will of the people, will prevail as an implied modification pro tanto. Chicago v. Reeves, 220 Ill. 274, 77 N. E. 237. In the case of Brown v. Galveston, supra, practically the same holding is made. We think it is evident that it was not the purpose in amending the Constitution to give the power both to the citizens affected and the Legislature by local act to incorporate such cities as such a concurrent power would be inconsistent or conflicting and as said by Judge Williams, in Gillespie v. Lightfoot, supra:

"The rule so established bears down and supplants all other laws and rules that are inconsistent with it."

"It must be presumed that the Constitution, in selecting the depositaries of a given power, unless it be otherwise expressed, intended that the depositary should exercise an exclusive power, with which the Legislature could not interfere by appointing some other officer to the exercise of the power." State v. Moore, 57 Tex. 314; Parks v. West, 102 Tex. 11, 111 S. W. 726.

It is unnecessary, as we conceive the question, to determine whether the word "may," in giving the inhabitants of cities the power to adopt charters by a majority vote, should be interpreted as merely permissive or imperative. It may mean that the people can accept the alternative of incorporating under the general laws or of forming their own charter to meet their local needs, by adopting a charter by a majority vote. The Legislature which met in January, following the adoption of the amendment, evidently so interpreted the amendment. By the fourth section of the act (chapter 147, p. 307, 33d Legislature; Vernon's Sayles' Ann. Civ. St. 1914, art. 1096d), it is declared the purpose of the act is to bestow upon any city adopting its charter full power of local self-government. The first section of that act sets out the constitutional amendment as heretofore quoted. It is also recited in the emergency clause that there is no enabling act authorizing citizens of cities of more than 5,000 inhabitants to avail themselves of the constitutional amendment recently adopted "authorizing them by a vote of the qualified voters, to adopt or amend their charter." Judge Lane, in the case of Xydias v. City of Houston, 185 S. W. 415, in speaking of the amendment, said:

"The city council does not derive its power to enact such ordinances as it deems necessary to prevent immoral exhibitions within its corporate limits from the Legislature, but it derives such power directly from the sovereign people, and the only limitations placed on such power by said section is that said council shall not pass any ordinance inconsistent with the Constitution and laws enacted by the Legislature of this state. Since the adoption of said constitutional section, there is no longer a necessity for the Legislature to confer power upon such city councils, but it may limit its powers only. In other words, the Legislature no longer delegates legislative power to such city councils."

The courts have frequently declared local laws void where their passage was prohibited by section 56, art. 3. Both the Courts of Civil Appeals and the Supreme Court, in the case of Hall v. Bell County, supra, declared an act of the Thirty-First Legislature (chapter 120), exempting Bell county by name from the operation of the county auditor's law, to be void because it was a local law and attempted to regulate county affairs thereby. In the case of Altgelt v. Gutzeit, 201 S. W. 400, the Supreme Court held that an act of the Thirty-Third Legislature providing a road system in Bexar county, fixing a salary of $2,400 per annum in lieu of all other fees of county commissioners to supervise the roads in their respective districts, so far regulated the affairs of said county as to be unconstitutional as a local and special act. In the case of Tolle v. City of New Braunfels, 154 S. W. 345, it was held an act which authorized the city to condemn lands, etc., in constructing public utilities, violated section 56, art. 3, which prohibits the Legislature from changing charters of cities of less than 10,000 population by local or special laws. In Ward v. Harris County, 209 S. W. 792, it is held the act creating the county court at law of Harris county, and providing the county judge shall receive for the ex officio duties of his office not less than $1,500 a year, and the Harris county road act likewise providing extra compensation for the county judge, were local and special laws, regulating the affairs of the county, and invalid under the Constitution, § 56, art. 3. As further illustrating our views on this matter, we call attention to article 8, § 9, of the Constitution, limiting the rate of municipal taxation to 25 cents on the $100 for general purposes; 15 cents for road and bridges, 15 cents for jurors, and 25 cents for the erection of public buildings. The legislative authority, prior to the amendment, to increase the taxation by local laws, was found in section 5, art. 11, which authorized them to increase the tax to 2½ per cent. of the taxable values of cities of 5,000 or more. By the amendment the power to charter is vested in the people of the city and provides no taxes shall be lawful which shall exceed 2½ per cent. The act in question attempted by local law to grant to the city council of Plainview power to levy an ad valorem tax of $2 on the $100 valuation, to pay the interest and provide a sinking

fund on the bonded indebtedness of the city, etc., and 50 cents for street or sidewalk improvements. It was the evident purpose, in amending the charter, to place the power in the voters of the city to adopt a charter giving greater power to the city council, for taxation, than is granted under article 8, § 9. Theretofore it had been in the power of the Legislature by local law to increase the rate of such cities; that power was withdrawn and placed in the hands of the local inhabitants. Crabb v. Celeste Sch. Dist., 105 Tex. 194, 146 S. W. 528, 39 L. R. A. (N. S.) 601, Ann. Cas. 1915B, 1146.

It has been held with reference to things prohibited by section 56, art. 3, that the Legislature would, under the general powers granted it by the Constitution, have had legislative power with reference thereto but for the prohibition, and hence if the power is found in some other provision of the Constitution, expressly or impliedly, conferring upon the Legislature the power to pass local or special acts, the inherent power would not be affected so to legislate by the restriction, and would not be held to be prohibited under such prohibition section; but the express or implied power to so legislate will be treated as an exception to the prohibition section. In addition to the authorities heretofore cited, the following bear upon the questions: State v. Brownson, 94 Tex. 436, 61 S. W. 114; Snyder v. Baird, 109 S. W. 472; Cummins v. Gaston, 109 S. W. 476; Parks v. West, 102 Tex. 11, 111 S. W. 726; Glass v. Poole, 106 Tex. 266, 166 S. W. 375; Houston v. Gonzales Independent School Dist., 202 S. W. 963; Powell v. Charco Independent School Dist., 203 S. W. 1178. In the latter case the above authorities are cited with others, and the principles controlling the construction of the powers granted and reserved to the Legislature are discussed therein.

[3] We are forced to the conclusion that the act in question is local or special, and that the Legislature thereby attempted to incorporate and grant a charter and repeal or amend the former charter of the city of Plainview; that this act was prohibited by the Constitution quoted; that its effect was to defeat the inhabitants of that city of the right to adopt or amend their charter for the government of that city by a majority vote of the qualified electors thereof; that there was no power in the Legislature to pass such an act, but that it was expressly prohibited, and there is no such exception to the prohibition in the Constitution as will authorize the courts of the Legislature to imply a power so to incorporate the city of Plainview.

The trial court, we think, erred in sustaining the general exception, and we therefore reverse the judgment and remand the cause for trial.