

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable T. M. Trimble
First Assistant State Superintendent
Department of Education
Austin, Texas

Dear Sir:

Opinion No. 0-7007

Re: Constitutionality of S. B.
50, Acts 1945, 49th Legis-
lature; Regular Session,
Creating the State Board of
School Safety Supervision
and Authorizing it to make
certain rules and regulations
in connection with the con-
struction and alteration of
school buildings.

Your letter of recent date, requesting an opinion
on the above subject, has been received and given careful
consideration. We acknowledge, also, copy of an unsigned
letter citing authorities which have been most helpful to us
in our study of the question, that is, the constitutionality
of Senate Bill 50, Acts of 1945, 49th Legislature. The Bill
now appears in the pocket parts of Vernon's Annotated Civil
Statutes, as Article 2898-1 and will be referred to in the
opinion as the "Act" or cited by its number.

The pertinent sections of the Act which are in
question are quoted below:

"Sec. 16. Articles 2920, 2921 and 2922
of Title 49, Chapter 19 of the Revised Civil
Statutes of Texas, 1925, are hereby repealed,
and all laws and parts of laws in conflict
herewith are hereby repealed insofar as they
are in conflict.

" . . . .

"Sec. 16-b. Nothing in this Act, except
Sections 8 to 12, inclusive, shall apply to any

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

independent school district having within its
limits a city containing a population of 375,000
inhabitants or more according to the last pre-
ceding or any future Federal Census."

We do not deem it necessary to quote the entire
Act. Suffice it to say that a quick reading of it will reflect
that the teeth of the act are found in Sections 1 to 8 and 13
through 16-b, and not in Sections 8 to 12, inclusive, the only
sections left applicable to an independent school district
having in its limits a city with a population of 375,000 or
more. According to the last preceding Federal Census, Houston
is the only city in Texas that has such population and there-
fore the Houston Independent School District would be the only
exemption under the Act.

According to the last preceding Federal Census,
which was taken in 1940, the City of San Antonio had a population
of 335,000; the City of Dallas 365,000; the City of Houston
445,000. No other city in the State had a population in 1940
approximating these figures. The next Federal Census will not
be taken until 1950, if then. Therefore, no independent school
district other than the Houston District could qualify under
the exemption clause until 1950 in any event.

This department has written several opinions on
strikingly similar statutes and has consistently held them un-
constitutional. The great weight of authority, and certainly
the courts of this State have been in harmony in striking down
legislation of this kind and character. One of the most recent
opinions emanating from this office in which we find a similar
statute under attack was approved October 19, 1945 (Opinion
No. 0-6846). Here another Act of the 49th Legislature, i.e.
H. B. 555, was viewed as unconstitutional and void. We enclose
a copy of the opinion for your attention.

In the case of Anderson, County Judge et al v.
Wood, a Supreme Court case decided in May 1941 and reported in
152 S. W. (2d) 1084, we find a similar statute under attack.
Quoting from the opinion written by Chief Justice Alexander, we
find the following wording:

"The next point relates to the question of
who has the right to employ and discharge county traffic

officers. Both parties seem to rely on Acts 1935, 44th Leg., p. 711, ch. 306, Vernon's Annotated Civil Statutes, Art. 6699b, for their authority to appoint the traffic officers in question. Said act reads in part as follows:

"'Section 1. The Commissioners Court of each county, acting in conjunction with the sheriff, may employ not more than eight (8) regular deputies nor more than four (4) additional deputies for special emergency to aid said regular deputies, to be known as County Traffic Officers to enforce the Highway Laws of this State regulating the use of the public Highways by motor and other vehicles.

"'* * * * *

"'Sec. 4. The provisions of this Act shall apply to all counties in this State having a population of more than one hundred and twenty-five thousand (125,000) according to the preceding Federal Census. Provided, this Act shall not apply to counties of not less than one hundred and ninety-five thousand (195,000) population, nor more than two hundred and five thousand (205,000) population according to the last preceding Federal Census.'

"(6) Upon a thorough investigation we are convinced that this act is unconstitutional. Section 56, Article III, of the State Constitution, reads in part as follows:

"'Sec. 56. The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing:

"'* * * * *

"'Regulating the affairs of counties, cities, towns, wards or school districts;

"'* * * * *

"'Creating offices, or prescribing
the powers and duties of officers, in coun-
ties, cities, towns, election or school
districts;

" . * * * * *

"'And in all other cases where a
general law can be made applicable, no
local or special law shall be enacted;
* * *.'

"It will be noted that the first sentence of
Section 4 of the act here under consideration pro-
vides:    'The provisions of this Act shall apply to
all counties in this State having a population of
more than one hundred and twenty-five thousand
(125,000) according to the preceding Federal Census.'

"If this were the only limitation on the applica-
tion of the act, its validity could be sustained as a
general law on the ground that the classification is
broad enough to include a substantial class, and the
necessity for classification on the basis employed
seems to bear some real and fair relation to the sub-
ject of the legislation.  Clark v. Finley, Comptroller,
93 Tex. 171, 178, 54 S. W. 343.  But the second sentence
of Section 4 provides:  'Provided, this Act shall not
apply to counties of not less than one hundred and ninety-
five thousand (195,000) population, nor more than two
hundred and five thousand (205,000) population according to
the last preceding Federal Census.'

"An examination of the 1930 Federal census discloses
that Tarrant County is the only county in the State hav-
ing a population in excess of 125,000 that is excluded
from the provisions of the act.  We can conceive of no
reason why the Commissioners' Courts of counties with a
population of less than 195,000 and those with populations
in excess of 205,000 should have a right to employ county
traffic officers, while the Commissioners' Court of Tar-
rant County, such county having a population of between
195,000 and 205,000, should not have such right.  The

necessity for the employment of traffic officers in Tarrant County appears to be as urgent as in counties of lesser population. The classification appears to be an arbitrary one bearing no relation to the subject of legislation, and as a consequence this particular section of the act is void as a local or special law. Miller v. County of El Paso, Tex. Sup., 150 S. W. 2d 1000 (not yet reported in State Reports); City of Fort Worth v. Bobbitt, 121 Tex. 14, 36 S. W. 2d 470, 41 S. W. 2d 228; Bexar County v. Tynan, 128 Tex. 223, 97 S. W. 2d 467.

"(7) It is very well settled that a statute excepting certain counties arbitrarily from its operation is a 'local or special' law within the meaning of the above constitutional provision. Hall v. Bell County, Tex. Civ. App., 138 S. W. 178, affirmed by the Supreme Court, Bell County v. Hall, 105 Tex. 558, 153 S. W. 121; Webb v. Adams 180 Ark. 713, 23 S. W. 2d 617; State ex rel. Johnson v. Chicago, B. & Q. R. Co., 195 Mo. 228, 93 S. W. 784, 113 Am. St. Rep. 661; 6 R.C.L. 129, 59 C. J. 736. This last proviso exempting counties with a pppulation between 195,000 and 205,000 is a part of the original act, and is not an amendment thereto. Since it is void, the whole act must be declared void, because otherwise the court would have to apply the act to all counties having a population in excess of 125,000 and this would be giving the act a broader scope than was intended by the Legislature. The rule applicable in such cases is thus stated in Lewis' Sutherland, Statutory Construction, 2d Ed. Vol. 1, sec. 306, as follows: 'If, by striking out a void exception, proviso or other restrictive clause, the remainder, by reason of its generality, will have a broader scope as to subject or territory, its operation is not in accord with the legislative intent, and the whole would be affected and made void by the invalidity of such part.' Substantially the same rule is announced in Ruling Case Law, vol. 6, p. 129. The above rule was followed by this Court in Texas-Louisiana Power Co. v. City of Farmersville, Tex. Civ. App., 67 S. W. 2d 235, 238. See, also, James C. Davis, Director General, v. George Wallace, 257 B. S. 478, 42 S. Ct. 164, 66 L. Ed. 325."

In the case of Miller et al vs. El Paso County, 150 S. W. (2d) at page 1000, a strikingly similar statute to the one in question in this opinion was under attack. The Court again speaking through Chief Justice Alexander stated, in part, as follows:

"We are therefore met at the outset with a law which, under facts well known at the time of its adoption, was applicable only to a single county. Clearly then it is a local law and must fall as such, unless it can be fairly said that the class so segregated by the Act is a substantial class and has characteristics legitimately distinguishing it from the remainder of the State so as to require legislation peculiar thereto. In this instance the classification is made to rest entirely on the population of the county and a city therein. . . .

"The peculiar limitations employed by the Legislature in this instance to segregate the class to be affected by the legislation not only bears no substantial relation to the objects sought to be accomplished by the Act, but the purported class attempted to be so segregated is, in fact, not a class distinct in any substantial manner from others in this State. . . After having carefully considered the matter, we are convinced that the attempted classification is unreasonable and bears no relation to the objects sought to be accomplished by the Act, and that as a consequence the Act is void.

"  .  .  ."

The caption of Senate Bill 50 reads as follows:

"An Act declaring public policy and creating State Board of School Safety Supervision; prescribing the authority, powers and duties thereof; providing for personnel, requiring certain minimum safety standards; providing that no public money shall be expended except upon certain conditions; excepting certain school districts herefrom; repealing Articles 2920, 2921 and 2922 of Title 49, Chapter 19 of the Revised Civil Statutes of 1925 and all laws in conflict herewith, and declaring an emergency,"

Articles 2920, 2921 and 2922, all of which Senate Bill 50 attempted to repeal, were the statutes that set up building specifications for public schools, the method of securing permits for the construction of school buildings and required the Board of Trustees of school districts to secure legal permits for the construction of buildings before any person charged with disbursing school funds would be allowed to pay out any sum of public money for the construction of any school building at an expense of more than $400.00.

In the emergency clause of the bill in question we find this language:

"The fact that present laws and ordinances do not give adequate protection to the lives of school children nor prevent the unnecessary destruction of school property, . . . ."

We can find no basis for the Legislature to conclude that the protection to the lives of school children in a district containing a city of more than 375,000 people is any less important or of less concern than in districts which have cities and towns with a population of 335,000 or 350,000. To the contrary we think "adequate protection" to the lives of all school children in all our cities, towns and villages is paramount. A law that is designed to give such protection to any group should apply to all. The same precautions should be taken to prevent "unnecessary destruction" of public school property in cities, towns and villages alike. The segregation of the principal city in our State and exempting it from the main portions of this Bill, i.e., Senate Bill 50, was, we think, arbitrary, unreasonable and without foundation. The school children and the public school property in the city of Houston is entitled to and should have the same degree of protection as that of any other city, town or village in the State.

You are advised, therefore, that it is the considered opinion of this department that Section 16-b of Article 2198-1 is unconstitutional and void.

Further, we cannot state with certainty that the Legislature would have passed the Bill without the exception clause. To strike it out and leave the remainder of the Act to stand would give the Article a broader scope than the

Legislature apparently intended. We must hold, therefore, that S. B. 50, Acts of 1945, 49th Legislature, Regular Session, unconstitutional, void and of no force and effect.

In the case of County School Trustees of Orange County, et al v. District Trustees of Prairie View Common School District No. 8, 153 S. W. (2) 434, a Supreme Court case, an Act of the 1935 Legislature was under attack and the court, after holding one provision of the Act unconstitutional, went further and stated:

"It therefore cannot be said that the Legislature would have passed any part of the Act with the invalid portions eliminated. It follows that the entire Act is void.

"If the Act of 1935 is void it repealed no law behind it. Galv. & Western Ry. Co. vs. City of Galveston, 96 Tex. 520, 74 S. W. 547.

"This rule applies in this case even though the Act of 1935 contains a section expressly repealing a former Act on the same subject. It will not be held that the Legislature would have repealed the existing law relating to the formation, change etc. of school districts in this State without substituting some other laws in their places."

Having determined that Senate Bill 50, Acts 49th Legislature, 1945 to be unconstitutional and void, it follows that such bill repeals no law and therefore Articles 2920, 2921 and 2922, Vernon's Annotated Civil Statutes remain in full force and effect.

Trusting the above satisfactorily answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By      E. M. DeGeurin
          Assistant

EMDeG:bt

APPROVED FEB 23, 1946

FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN